1

2

3

4    **NOT FOR CITATION**

5    UNITED STATES DISTRICT COURT

6    NORTHERN DISTRICT OF CALIFORNIA

7

8    HOWARD MISLE,                                    Case No.  15-cv-06031-JSW

9              Plaintiff,

10        v.                                          **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION**

11   SCHNITZER STEEL INDUSTRIES, INC.,

12             Defendant.                             Re: Dkt. No. 59

13

14        Now before the Court for consideration is the motion for summary adjudication filed by

15   Defendant Schnitzer Steel Industries, Inc. ("SSI").  The Court has considered the parties' papers,

16   relevant legal authority, the record in this case, and it has had the benefit of oral argument.  For the

17   reasons set forth in this Order, the Court GRANTS SSI's motion.

18                                    **BACKGROUND**

19        It is undisputed that Plaintiff, Howard Misle ("Misle"), other entities not parties to this

20   lawsuit, and SSI entered into an Asset Purchase Agreement (the "APA") dated April 6, 2011.[1]  It

21   also is undisputed that the transaction closed on April 21, 2011 (the "Closing Date").  Pursuant to

22   the APA, SSI agreed, for a sum certain, to purchase "all of the assets of the Selling Parties used or

23   held for use in, relating to or arising out of the Business[2], subject to the exclusions and on the

24   _____

25   [1]     The other entities are American Metal Group, Inc., American Metal & Iron, Inc., AMI Recycling, Inc., AMI Recycling Drive-Thru, Inc., Dimond Metal Recycling, Inc., A-1 International Recycling Consultants, Inc., Metal Brokers Recycling, Inc., L&M Auto Dismantling,

26   Company, Inc., and HNM Properties, Inc.  These entities are referred to throughout the APA as the "Selling Parties."  Misle is referred to as the "Selling Party Representative."

27

28   [2]     "Business" is defined as the Selling Parties' "business of collecting, processing, transporting and selling ferrous and non-ferrous scrap metal, glass, plastics and cardboard and

United States District Court
Northern District of California

1   terms set forth" in the APA.[3]  (Dkt. No. 63-1, Declaration of Howard Misle in Opposition to

2   Defendant's Motion for Summary Adjudication ("Misle Opp. Decl."), ¶ 4, Ex. A, APA, Recitals, ¶

3   C.)[4]

4        The parties agreed that a portion of the total purchase price, $5,500,000.00 (the "Escrow

5   Funds" or "Escrow Amount"), would be placed in escrow and held by Wells Fargo Bank, N.A. as

6   escrow agent.[5]  (Dkt. 59-2, Declaration of James Denzer in Support of Defendant's Motion for

7   Summary Judgment ("Denzer Decl."), ¶ 3, Ex. 1, APA, Art. IV, § 4.2(c).)  The APA states that the

8   Escrow Funds are "to serve as a source of indemnification for the matters addressed in Article IX

9   and to be held and released under the terms of the Escrow Agreement."  (*Id.*)

10
11
12
13
14
15
16

> Pursuant to the terms of the Escrow Agreement and this Agreement, the Escrow Amount will be divided into two parts as follows: (i) $4,500,000 of the Escrow Amount will be used for indemnification matters addressed in Section 9.2, with $2,250,000 of such portion of the Escrow Amount (less any paid or pending claims) to be disbursed to the Selling Parties on the first anniversary of the Closing Date and the remaining balance of such portion of the Escrow Amount to be disbursed to the Selling Parties on the second anniversary of the Closing Date (less any paid or pending claims); and (ii) $1,000,000 of the Escrow Amount will be used for indemnification matters addressed in Section 9.7 and held until the fifth anniversary of the Closing Date[.][6]

17   (*Id.*)

18        The APA also states that "[a]ny Party seeking indemnification shall promptly notify the

19   Party obligated to provide indemnification hereunder of any Loss or Losses, claim or breach,

20

21   ──────────────────────────

22   other aspects of metals recycling and other materials recycling."  (Misle Opp. Decl., APA, Recitals, ¶ A.)

23   [3]   The total purchase price is not material to this motion.

24   [4]   SSI objected to certain portions of the Misle Declaration, which relate to his interpretation
25   of a settlement agreement between the parties.  (Dkt. No. 66-1.)  The Court overrules the
     objections on the basis that SSI has not demonstrated that the statements are inadmissible.  The
26   Court does not, however, accept as true Misle's characterization of the terms of the settlement
     agreement.

27   [5]   The APA refers to the $5,500,000.00 as the "Escrow Amount."  The Court shall use that
     term when it is quoting from the APA.  Otherwise, it shall use the term "Escrow Funds."

28   [6]   There are other provisos set forth in Section 4.2(c), which are not at issue in this lawsuit.

United States District Court
Northern District of California

1   including any claim by a third party, that might give rise to indemnification hereunder, and the

2   Indemnified Party shall deliver to the Indemnifying Party a … Claim Certificate." (Denzler Decl.,

3   Ex. 1, APA, Art. IX, § 9.5(a)).)

> If the Indemnifying Party objects to the indemnification of an
> Indemnified Party in respect of any claim or claims specified in any
> Claim Certificate, the Indemnifying Party shall deliver a written
> notice to such effect to the Indemnified Party within 30 days after
> receipt by the Indemnifying Party of such Claim Certificate.
> Thereafter the Indemnifying Party and the Indemnified Party shall
> attempt in good faith to agree upon the rights of the respective
> parties within 30 days of receipt of such Claim Certificate with
> respect to each of such claims to which the Indemnifying Party has
> objected.  If the Indemnified Party and the Indemnifying Party agree
> with respect to any of such claims, the Indemnified Party and the
> Indemnifying Party shall promptly prepare and sign a memorandum
> setting forth such agreement and, if applicable an instruction to the
> Escrow Agent.  Should the Indemnified Party and the Indemnifying
> Party fail to agree as to any particular item or items or amount or
> amounts, then the Indemnified Party shall be entitled to pursue its
> available remedies for resolving its claim for indemnification.

13  (*Id.*, APA, Art. IX, § 9.5(a)(ii).)

14          Misle and SSI executed the Escrow Agreement on April 20, 2011.  (Dkt. No. 59-3,

15  Request for Judicial Notice, Ex. 1, *Wells Fargo Bank N.A. v. American Metal Group., Inc.*, 16-cv-

16  3614-JSW, Complaint, Ex. 1, Escrow Agreement.)  The Escrow Agreement contains provisions

17  that set forth the procedures for disbursement of the Escrow Funds.  (*Id.*, Escrow Agreement, Art.

18  I, § 1.3(d)-(f).)  The parties agreed that disbursements could be made by joint or unilateral

19  instructions.  (*Id.*, Escrow Agreement, Art. I, § 1.3(a).)

> In the event the Escrow Agent receives Unilateral Instructions and a
> related Proof of Notice from the Buyer, the Escrow Agent shall pay
> the Escrow [Funds] to the account or accounts described in such
> Unilateral Instructions on the thirtieth day after receipt of such
> Unilateral Instructions, unless, before the thirtieth day after the date
> of receipt of such Unilateral Instructions, the Escrow Agent has
> received a Notice of Dispute and a related Proof of Notice from
> Misle.  In the event the Escrow Agent receives such a Notice of
> Dispute, the Escrow Agent shall not pay the amount described in
> such Unilateral Instructions, but shall proceed as set forth in Section
> 3.5.

26  (*Id.*, Escrow Agreement, Art. I, § 1.3(c).)

27          In December 2014, SSI sent Misle a Claim Certificate and served Unilateral Instructions

28  on Wells Fargo seeking indemnification in the amount of $86,604.60 ("December Claim").  (Dkt.

United States District Court
Northern District of California

3

No. 59-1, Declaration of Thomas Woods ("Woods Decl."), ¶ 3, Ex. A.)  It is undisputed that Misle did not serve a Notice of Dispute on Wells Fargo.  As a result, Wells Fargo distributed those funds to SSI.  Misle contends that when SSI submitted the December Claim, which Misle argues lacks merit, accepted the funds from Wells Fargo, and subsequently refused to return the funds to Misle, it converted those funds.  (*See* Compl. ¶¶ 25-27.)  SSI moves for summary adjudication of this claim.

The Court will address additional facts as necessary in its analysis.

## ANALYSIS

**A.      Legal Standards Applicable to Motion for Summary Adjudication.**

"A party may move for summary judgment, identifying each claim or defense … on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c).  An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if it may affect the outcome of the case.  *Id.* at 248.  If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate

United States District Court
Northern District of California

1    burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

2    (9th Cir. 2000).

3         Once the moving party meets its initial burden, the non-moving party must "identify with

4    reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91

5    F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th

6    Cir. 1995).  It is not the Court's task "to scour the record in search of a genuine issue of triable

7    fact."  *Id.*; see also Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but

8    it may consider other materials in the record.").  If the non-moving party fails to point to evidence

9    precluding summary judgment, the moving party is entitled to judgment as a matter of law.

10   *Celotex*, 477 U.S. at 323.

11   **B.    The Court Grants SSI's Motion for Summary Adjudication of the Conversion Claim.**

12        There are three essential elements to Misle's claim for conversion, only two of which are at

13   issue in this motion.[7]  First, Misle must establish his ownership or right to possession of the

14   disputed funds.  *See Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003); *Hartford Financial*

15   *Corp. v. Burns*, 96 Cal. App. 3d 591, 598 (1979).  The "'mere contractual right of payment,

16   without more, will not suffice' to support a claim for conversion."  *Rutherford Holdings, LLC v.*

17   *Plaza Del* Rey, 223 Cal. App. 4th 221, 233 (2014) (quoting *Farmers Ins. Exchange v. Zerin*, 53

18   Cal. App. 4th 445, 452 (1997)).  The second element requires Misle to establish that SSI converted

19   the disputed funds by a wrongful act or disposition of his property rights.  *Hartford*, 96 Cal. App.,

20   3d at 599 ("conversion is any act of dominion wrongfully exerted over another's personal property

21   in denial of or inconsistent with his rights therein") (internal quotations and citations omitted).

22   Because the Court concludes that Misle cannot establish the second element, the Court shall

23   assume for the sake of argument he had a right to possess the funds that are the subject of the

24   December Claim.

25        In general, "'[c]onduct amounting to a breach of contract becomes tortious only when it

26   also violates a duty independent of the contract arising from principles of tort law.'"  *Erlich v.*

27

28   ──────────────
     [7]    The third element is damages.  SSI does not argue that Misle cannot prove this element of
     the claim.

United States District Court
Northern District of California

*Menezes*, 21 Cal. 4th 543, 551 (1999) (quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994)).[8]  Thus, "outside the insurance context, 'a tortious breach of contract … may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion or; (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages.'"  *Id.* at 553-54 (quoting *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 105 (1995) (Mosk, J. concurring, in part, and dissenting in part).  In *Erlich*, the Supreme Court provided a number of examples of when tort damages had been permitted in contract cases.  *Erlich*, 7 Cal. 4th at 551-52.  The *Erlich* court stated that "in each of these cases, the duty that gives rise to tort liability is either completely independent of the contract *or* arises from conduct which is both intentional and intended to harm."  *Id.* at 552 (emphasis added).

In his Complaint, Misle alleges the December Claim is "without merit and … improperly sought funds Defendant SSI was not entitled to under the APA."  (Compl. ¶ 25.)  The same allegations support Misle's breach of contract claim.  (*Id.* ¶ 14.)  Misle also argues that the items for which SSI sought indemnification in the December Claim are not permitted under the APA.  That is a dispute about the meaning of the APA's terms and is no more than an assertion that SSI breached the contract when it submitted the claim.  The Court concludes, as a matter of law, that conduct does not violate a duty that is independent of the contractual duties to which the parties agreed and cannot support a claim for conversion.

In a notice of additional authorities, Misle cited *Robinson Helicopter, Inc. v. Dana Corp.*, 34 Cal. 4th 979 (2004).  In that case, the Supreme Court addressed the issue of whether the economic loss rule would bar "claims for intentional misrepresentation of fraud in the performance of a contract."  34 Cal. 4th at 984.  The plaintiff manufactured helicopters and contracted with the defendant to manufacture and supply it with a particular part, of which

---

[8]      When the Court cited *Erlich* in its Notice of Questions, it inadvertently omitted a portion of that quotation.  (*See* Dkt. No. 72, Notice of Questions, Question 3.)

defendant was the sole manufacturer. *Id.* at 985. The plaintiff was required by the Federal Aviation Administration ("FAA") to obtain a "type certificate," and "[e]very aircraft made pursuant to the certificate must be produced exactly in accordance with that certificate." *Id.* Although the defendant originally manufactured the part in accordance with the plaintiff's specifications, at one stage it changed its manufacturing process. That change deviated from the type certificate's requirements, and the defendant failed to advise the plaintiff of that fact. Instead, it submitted certificates stating that the part had been "manufactured in conformance with [plaintiff's] written specifications." *Id.* at 985-86.

The parts that deviated from the original specifications began to fail, and the plaintiff was required by the FAA and the FAA's British equivalent to recall and replace them. *Id.* at 986. The plaintiff submitted its orders to the defendant and asked that the cost of the replacement parts be determined at a later date. The defendant disputed any liability and refused to provide plaintiff with any replacement parts without payment. Because the defendant was the only manufacturer of the part, plaintiff had no choice but to comply. *Id.* The plaintiff sued defendant for, *inter alia*, claims for breach of contract and intentional misrepresentation, prevailed at trial on those claims, and was awarded compensatory and punitive damages. On appeal, the court held that because the plaintiff's loss was economic, it could not recover in tort and overturned the award of punitive damages. The Supreme Court reversed.

It reasoned the defendant engaged in conduct that was "separate from the breach" of contract, *i.e.,* the provision of non-conforming goods. Specifically, when the defendant submitted "false certificates of conformance, [it] unquestionably made affirmative representations that [plaintiff] justifiably relied on to its detriment. But for [defendant's] affirmative representations, [plaintiff] would not have accepted delivery and used the nonconforming [part] over the course of several years…." *Id.* at 990-91. In sum, the defendant engaged in "fraud … a tort independent" of the defendant's breach of contract, and the economic loss rule did not bar recovery on the claims for fraud and misrepresentation. *Id.*[9]

---

[9] The *Robinson Helicopter* court found it significant that the defendant made "intentional and affirmative misrepresentations that risked physical harm to persons," because it was "vital to

1    This argument is raised, albeit briefly, in Misle's opposition, in that he argues "SSI

2    knowingly sought more than the benefit of its bargain under the APA," which amounted to "a

3    wrongful act." (Dkt. No. 63, Opp. Br. at 8:2-3.) At the hearing, Misle elaborated on this

4    argument and asserted that SSI knew the December Claim was *false* and submitted it anyway.

5    According to Misle that conduct would be independently wrongful and would give rise to tort

6    liability in this case. The Court finds, however, that Misle has failed to put forth any evidence

7    from which a reasonable jury could find that SSI engaged in fraudulent or deceptive conduct.

8        One aspect of the December Claim relates to indemnification for soil contamination.

9    Misle submits excerpts of a deposition that suggests SSI may not have supervised the collection of

10   the soil sample, did not know the source of the sample, and did not know whether the soil had

11   been contaminated before the closing date of the APA. (Dkt. No. 63-2, Declaration of Donnelly

12   Gillen, ¶ 4, Ex. A, Excerpts of Deposition of Scott Sloan ("Sloan Depo.") at 55:1-56:9, 57:25-

13   58:3.) If one accepts Misle's interpretation of the APA, what is lacking from these excerpts is any

14   suggestion that, for example, SSI had facts to suggest that the soil had, in fact, been contaminated

15   before the closing date or that the soil came from some other property. Thus, Misle has not met

16   his burden to show a there material facts in dispute about whether SSI acted deliberately and with

17   knowledge the facts set forth in the December Claim were untrue.

18       The Court finds the same is true with respect to Misle's arguments regarding that aspect of

19   the December Claim that addresses the underground storage tank. Similarly, the Court finds Misle

20   has not met his burden to show there are material facts in dispute as to whether SSI allegedly

21   breached the terms of the APA with the intention or knowledge that it would cause Misle "severe

22   unmitigable harm in the form … substantial consequential damages.'" *Erlich*, 7 Cal. 4th at 553-54

23   (quoting *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 105 (1995) (Mosk, J.

24   concurring, in part, and dissenting in part).[10] In sum, the Court concludes Misle has not

25

26   the safe performance of the aircraft" that the part function properly. *Id.* at 991 n.7; *see also id.* (
     "the certificate requirement is part of an integrated regulatory scheme intended to ensure [the
27   part's] safe operation").

28   [10]    The Court also notes that the *Robinson Helicopter* court emphasized that its holding was
     "narrow in scope and limited to a defendant's affirmative representations on which a plaintiff

United States District Court
Northern District of California

1  demonstrated that SSI breached any duties outside of the parties' contractual obligations.

2      Accordingly, GRANTS SSI's motion for summary adjudication, and concludes it is

3  entitled to judgment in its favor on Misle's claim for conversion.[11]

4      **IT IS SO ORDERED.**

5  Dated: February 19, 2017

6  _____

7  JEFFREY S. WHITE
   United States District Judge

---

relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's
economic loss." *Robinson Helicopter*, 34 Cal. 4th at 993 (emphasis added).  There are no such
facts before the Court in this case.
[11]    The Court expresses no opinion on whether SSI's claim for indemnity, as set forth in the
December Claim, comported with or violated the terms of the APA.